Michael Rathsak, Jason Manning, Michael Rathsak, Michael Rathsak, Jason Manning, Michael Rathsak, Look forward to argument here and there. Mr. Rathsak when you are ready, you may proceed. Thank you, Your Honor. Michael Rathsak on behalf of the plaintiff appellate, Dana Foulks, who represents, of course, her son in this case. This is the case in which a school teacher in an orientation day proceeding instructed the young students in his class to run through the gym. And young boy, young man said to him, I have flip-flops. I don't think I should do this. The teacher told him to do it anyway. Predictably, the young man fell. And I use the word predictably because I think that's probably one of the keys to what we're talking about here today is whether or not that could be willful and  And by the way, the other courts, many courts I've been in have tried to give counsel 10 minutes to argue and then followed by questions. I wasn't sure if that was the process here. But anyway, I always prefer questions at any time. If that was the process, I would waive it. I'm happy to answer questions. That used to be the process, but as I said, we will interrupt you when we need to ask a question. Thank you. All right, thank you. The trial court here applied, we believe, an improper standing. It required a high probability of a risk of serious injury. It looked back to the Floyd and the Tolar cases. But the history of willful and wanton conduct and what it takes to have willful and wanton conduct in Illinois is simply broader than that, and to support that, and we've cited it in our brief over and over. If we look at either the Tort Immunity Act's definition or we look at the jury instructions definition of willful and wanton. If we look at the definitions of willful and wanton in Burke and the Zarco cases going way back, it's all much broader than that. All we need is one of two things, either utter indifference or a much simpler definition, the failure to exercise ordinary care after you have some knowledge of impending danger. And- If I could ask, there were no allegations in the complaint here of any prior similar injuries alleging that the teacher of the school district was aware of, correct? No, that is correct, that is correct. And one of the trial court's errors was that it gave two standards. One of the things it said is that you had to allege prior incidents before you could support willful and wanton conduct. I think that's pretty clearly not the rule. And I don't think that the defense in the briefing this would contest that. So we've got, and I think that's probably a correct statement. So calling out the holdings of in the logic of Floyd and Barr here. It appears to require that the defendant elects facts of either prior similar injuries from students running in flip-flops, which you've acknowledged was not pled at this point. Or facts from which you would put a reasonable person on notice of the risk of actual harm from running in flip-flops. So where is the evidence here in the complaint? I know there's something about general knowledge from the internet, but is that a conclusion? Are there any specific facts alleged regarding knowledge of the dangerous nature of running in flip-flops? I would argue twofold. One is that it's common knowledge, which is why we cited the various rules. Secondly, we have actually through a secondly, we allege that the school had a policy of not allowing this kind of footwear in any athletic activity, which surely reflects an understanding on the part of the school as I would think it reflects an understanding on all of us. That flip-flops are just not made for running. But yeah, isn't there, isn't the case low well settled that the lack of following a rule of the school district does not in and of itself elevate the conduct isn't there a case law that says that? There's there's case case law on both sides that the in this instance, we would argue that the allegation that there was an unwritten school policy against using this kind of footwear acts in association with the fact that he was wearing flip-flops and all you need to do is look at flip-flops and realize they're loose that loose kinds of semi sandals that are likely to cause injury and to that we added the citations to the rules or the articles rather that reflect the fact that it's just dangerous. That's why people that's why no one wants to wear them. So all those facts taken together, I believe should be sufficient. I'm not sure what else we could allege other than to have a videos implanted into the complaint showing people trying to run the flip-flops which would sort of As soon as you have soon as you have and I'm going back to the bar case. The bar case is the floor hockey case. That's the case that the defense I think probably put forward is the best case. And even in that case where they found the teacher was not guilty of willful conduct. Their rule was that there just had to be some evidence that the conduct is associated with the risk of serious injury and If running and flip-flops is not potentially associated with the risk of serious injury because you're going to fall That if the court's going to find that ruling, then that's we're going to lose. And, and, and our position is quite simply our flip-flops safe for running. We said no. We've said it's common knowledge.  Would anybody that we can think of send anybody out to run in any appropriate footwear. Just looking back the common sense. Well, did the articles did the articles in any way site Professional, maybe a doctor. Somebody who could say as in the trampoline cases, which were early and are pretty, pretty significant at this point. This is inherently dangerous being on a trampoline many or otherwise without certain things is inherently dangerous. In those articles that you took from the internet. Is there any such evidence of that nature by a doctor or some professional who has studied these things. No, and there's and there should be because at that point, then pleading out the trial counsel would be pleading evidence. We all know that you cannot plead evidence. It came up in the Murray case because it went to trial. We know what happened in Murray, because of the extensive discovery that took place. So apparently in Murray, the court was satisfied with the original allegations. No one struck the complaint that came in after the evidence was before the court. If, if, if I tried to do that here, I would have to go out. I trial counsel have to go out. Hire an expert, look at the facts and produce the experts affidavit with the complaint that the trial court would surely strike that as being evidence. Well, I, I'm not sure when you say surely strike that. I mean, isn't that giving some indication of, of your pleading that, or what you're pleading, I suppose would be that this is inherently dangerous. And this is how we establish that. I would disagree. I would think that would be pleading the evidence that I have to prove my allegations and courts are not very tolerant of filling up complaints with, with evidence that if we get past this stage and we can't, we don't bring anything in like that, then it's probably appropriate for what happened to some of the other cases of motion for summary judgment. But to actually put that in there and not to mention the fact we don't have. The purpose of the articles in part is to show that the school district should have been on notice of this so that they had knowledge of it and knew about it. In addition to common sense. And we do have the school policy. If you just consider flip-flops policy against them and what we all know flip-flops are, I think we all know what flip-flops are. Would anybody want, would anybody want to run and walk in them? Mr. Rathsek, I don't want to run anyway. I don't care that it's flip-flops. I'm just not into running. Let me, let me move away from that for just a moment. You know, the argument that the, the pleadings here seem to be, have to be more strict than maybe the proofs and the, what the jury would be instructed in seems to, seems to be a good argument, but it's also been addressed. And I, I wonder how you want to respond to how it's already been addressed. In terms of our position, just so, so I'm sure we're all on the same page. Our position is that the strict test that the trial court judge applied here is way stricter than the test that actually the jury hears. The jury hears a very simple definition of Wilson-Wyatt conduct, and that's been approved. The jury instruction has been approved. It's been around forever. It should not be, it should not be a situation where I have to plead to a higher standard than the jury hears in terms of what is and is not Wilson-Wyatt conduct. That's about the only way I can say that. Barr and all the other cases, Zarco and Burke, they don't talk about such a high standard of conduct. They talk about the standard that's in the jury instructions and said, that's all we need. Well, in the Floyd case, I think that's Justice Bowman's position in some way in his dissent that this is a job for the jury once the pleadings are in, not a job for the judge. And I know there was a disagreement in this case at the bench that the judge says, no, this is my job. I have to make sure the jury is getting appropriate pleadings to go forward. So that seems to be the problem. And of course, Justice Bowman's in a dissent and Justice McLaren was not. But you want to comment on that issue a little bit? Judge, jury, who should be making this decision? And that, before the argument, I struggled with that distinction. It's, I think, a fine distinction. I think the best I can do is say in all of these other cases that we're talking about, even the ones that the defense relies upon, those cases all went to the jury. Now, presumably counsel in all those cases were just as competent as hopefully counsel in this case were. And either they made motions that were denied or didn't think the motions were even appropriate. And all those cases went to the jury. And they must have faced the same pleadings issue that we see here. It's clear that to a certain extent, the trial court judge obviously has to rule that the pleading is good or bad. But in doing so, how can it, the bottom line is, how can a trial court judge set a stricter standard? If it was a product liability case, could the trial judge adopt a standard that was more product liability? Could the judge say, I don't think this case can go to the jury unless the manufacturer should have known about the defect when it left, as opposed to do it. That would not be the law. And it's not the law here. Chris, if I could shift gears for a second. I was a little intrigued and interested in what happened at the end of the trial court argument where the court, where trial counsel asked the court to dismiss the complaint with prejudice rather than seeking to file an amended complaint. So you're coming up before us, apparently all in on the adequacy of the complaint that was dismissed. So where does that leave you if we were to agree with the trial court's decision? It would leave the case dead in the water at this point. And if the court is, as with any lawyer, I always hate to retreat. But if the court believes that there are further allegations that are necessary and it's going to create a template, as if you will, for Wolfram One, that I think would be different than the templates we've seen for electing Wolfram One in context so far. That would, if not a sea change in the law, I think would be some change in the law because you would really be giving the trial court a set of guidelines that didn't exist when we were there. Then we would ask that the court remanded and to see if we can do better to, if the court is going to endorse pleading evidence, which is what I call it, bringing somebody's affidavit in that explains why flip-flops are dangerous, that we would have to do that. Up until this time, I don't believe that's been necessary. Thank you. Well, you know, in terms of, I was going to ask a similar question and Justice Hudson beat me to the punch, but I don't think that's our job to give anybody a template or even an advisory opinion about how it should be. We're here to review what the trial court did. Certainly, I'm not saying we never do slip in a suggestion now and then, but I mean, we can't tell your colleague how to plead and we have to rely on a trial court to review the law and then we review his or her work. It seemed to me when I read that give and take between Judge, I think it was Judge Waller and Mr. Printable or whoever was there on his behalf that day, that Mr. Printable was kind of throwing his hands up and saying, well, let's see if the appellate court's got a better idea. I don't think that's our purpose. I don't believe, in defense of my trial counsel, I don't believe that was his purpose. He thought, I believe, I'm sure he thought that based upon what the law is right now, that what we pled is sufficient. I'm suggesting to the court that a decision here in the lines of some of what we've been talking about would be a change, maybe not a sea change, but a change in the law that would then have us plead something a little bit different down below. If this court would issue an opinion that says that you need to have this, you have to have some specific factual evidence that something is, in fact, dangerous, that would, I believe, that'd be the first time that I have seen that. That'd be the first time I'm aware of it being the case. And if that's the case, that's a change in the law. Mr. Essek, in the Barr case, the court said, to establish willful and wanton conduct in the absence of evidence of prior injuries, Illinois courts have required, at a minimum, some evidence that the activity is generally associated with the risk of harm of serious injury. So there does have to be some evidence. That's not a new principle of law. So what here was the some evidence that the trial judge, for whatever reason, ignored or didn't accept in terms of fact pleading? The distinction is that it was not a pleading issue in Barr. When they said some evidence, they talked about motions following the pleading stage. So at that point, if somebody comes in with some re-judgment, you have to put in some evidence. We're long before that.  Your position is that, for fact pleading purposes, you don't need some evidence in the absence of prior injuries? That's correct. We need an allegation of fact as to what occurred. And again, I'll get back. It's become circular. An allegation that a child is wearing flip-flops and is directed to run, I think we can say that that leads to an inference that that's a dangerous thing to do. Because running in flip-flops is dangerous. If the court will not accept that there's some danger in running in flip-flops, it would be really contrary to the school rule we cited, and contrary to the articles we cited. And I would argue contrary to common sense. The court's seen it. A number of cases where the court has been critical of lawyers trying to plead evidence. And if we're the bar case, once we get to trial, we'll have the depositions of the people involved. We'll ask them what flip-flops. We can bring in an expert witness. And I presume we would on footwear, athletically. Unless the court has further questions, I think we've exhausted everything that I have to say in the brief. And I will conclude my part of the argument. And I will await my rebuttal. All right. Thank you, Mr. Rathsack. You will have an opportunity to reply after Mr. Manning proceeds with his argument. And so, Mr. Manning, if you are ready, you may proceed. Thank you. And may it please the court. Good morning. My name is Jason Manning. And I am appearing on behalf of Appellee's Community Unit School District 428. And Mr. Christopher Judkins in this case. At the outset, I want to pick up on a couple of points that were raised during counsel's opening argument. The first being that all of the cases, I believe counsel argued that all of the cases we rely upon went to the jury. And that's simply not the case. We have cited the Leha case from this court, which was a motion to dismiss case. The Floyd case was a motion to dismiss.  And we cited, I believe, at least six other cases from various appellate districts ruling on this very question on a motion to dismiss where the dismissal was affirmed. So I want to clear that up at the outset. And then the second point quickly before I move on is I believe counsel is arguing that the trial court applied some stricter or higher standard than the pattern jury instruction. And I would disagree with that. The discourse decision in Leha, for instance, articulated the relevant standard that the trial court followed for pleading willful and wanton conduct. That standard, which was informed by the plain language of the Tort Immunity Act's definition of willful and wanton conduct, the terms conscious disregard or utter indifference to the plaintiff's the terms that required some construction by the appellate courts, including this court and where this court landed in Leha was a standard that the plaintiff must plead specific facts to permit the inference that defendant was conscious that his action would naturally and probably result in injury or posed a high probability of serious physical harm. Well, how are all right, how then and let's talk a little bit about Mr. Essex position on pleading evidence specific facts would seem to be more evidentiary than notice issues. So how, how is that going to get past a judge who and he's right. A lot of them are not real happy about evidence being presented in pleadings. How are we going to deal with that? Well, I think it's an interesting distinction. I would not characterize the standard as requiring evidence, but rather specific facts that show sufficient to show knowledge on the part of the individual defendant here, the public teacher. That otherwise we're left with, you know, 2615 motions are gutted and the immunities are gutted if there's not some method of delineating between what's sufficient to plead ordinary negligence versus what's sufficient to plead willful and wanton conduct, which is often been deemed the equivalent of reckless conduct. And so I think the focus is not so much on on evidence, but some specific facts, we are fact leading jurisdictions sufficient to to satisfy the pleading standard for willful and wanton conduct. Why doesn't the unwritten policy of the school that thou shalt not run in flip-flops in gym class? Why isn't that sufficient factually to impart knowledge of the danger of running in flip-flops? Sure. And two points in response to that question. First, I will just point out that on the pleading this, the policy, I think Plaintiff concedes this point that the district's policies are available on their website and haven't pointed to a specific policy, but accepting the allegation as true, it's a policy as Plaintiff alleges specific to gym class and Plaintiff concedes this was not gym class and Plaintiff further concedes in his complaint that this teacher was not a gym teacher. So there are no allegations connecting how this teacher would have even known of this alleged policy. Second, we have the Floyd case and, you know, the related line of authorities that stand for the rule that simply pointing to a policy like that is insufficient to get you beyond ordinary negligence and to plead willful and wanton conduct. Well, it's kind of a subtle distinction, but the argument here is not so much per se that proves willful that the negligence is willful and wanton, but rather it shows that the school or the teacher was on notice that the activity was inherently dangerous. It's a bit of a distinction. Sure. And I could appreciate a reading of it that way. I think, you know, in reading the Floyd case, the court looked at that issue and determined that it simply wasn't enough. There have to be some facts beyond just that there was a policy. There have to be facts that would be sufficient to show the high probability of serious physical harm that we're missing. It wasn't enough in Floyd. And I would submit that there are less allegations here with respect to any substance around that policy that would put this teacher on notice of a high probability of physical harm. Well, at some point, not to be anecdotal, but I mean, I can't tell you how many times some people on this court probably yelled at their kids, stop running around the pool in your flip flop. You're going to hurt yourself. I mean, there are some activities that are kind of obvious in terms of the stupidity, especially when the kid says to the teacher, I don't think I should do this. I'm wearing flip flops. I'm not trying to be cute, but are there not certain and I'm not saying flip flops is necessarily one of them, but are there not certain activities that are obviously dangerous, like such that you probably need less back pleading for lack of a better way to put it? Sure. I think the cases certainly discuss that concept that there are some activities, trampolining, for instance, backward somersaults in the Landers case. The cases have talked about that. We see some guidance even in the Tort Immunity Act itself, which we said in our brief. Section 3-109 lists a pretty extensive list of hazardous recreational activities that are inherently dangerous. Statutes can tell us what activities are inherently dangerous. You get the Eyewear Protection Act in school, which was at issue, or at least discussed in the Hadley case. So certainly there are some activities where that would be the case, but the activity here was running. I don't think anybody would suggest the activity of running itself is inherently dangerous. So what we're looking at is some condition involved in the context of running that allegedly poses this higher risk. I think you do need facts there. The Ozek case involved a student running in a gym as well. The dangerous condition there was the alleged warped and uneven gymnasium floors and the volleyball nets that the student had to avoid. If I could interject, I think Mr. Rasek's position has certain intuitive appeal, so to speak, which leads me to the other point. A complaint should not be dismissed with prejudice unless it is clearly apparent that no set of facts can be proven that would entitle, obviously, the plaintiff to recover. What's your position on him being able to replead? Well, certainly we did not oppose his ability to replead in the trial court, and he was allowed one opportunity to replead in the trial court. And if you read the transcript, we did not oppose a second opportunity for him to leave to amend. It was plaintiff's counsel's own choice not to. And so having taken that path, it's my view that they're stuck with it, and it was their choice to do so. Is there something that would preclude us from remanding it back? If so, what would that be? I guess if the question is, is there anything that would preclude you from remanding it if you it would seem to me that your choice is to affirm that decision or overturn that decision. I'm not aware of a method to affirm the decision to dismiss it for failing to state a claim when the plaintiff chose to dismiss it with prejudice. I'm not sure what part, what would be the basis for a remand without overturning some underlying decision of the trial court? It would be asking us to speculate in some regards. I mean, the plaintiff had the option of asking leave to replead again and instead elected to vest us with jurisdiction saying what I've pled is enough. Would we be speculating if we undid that and said, okay, go ahead and do it? I certainly think there would be an element of speculation. There's also the issue of there's no indication from the trial court that there's any ability of the plaintiff to amend the current operative complaint. Well, the trial court before he was asked to do it with prejudice did it without prejudice. That is an indication that he thought that they should have another shot at it and maybe could be successful. I guess I would take issue whether the trial court indicated that he may be successful in amending. I certainly think it's the right course for trial courts to provide liberal opportunity for leave to amend. To me, that's what the Judge Waller was offering in this case. Plaintiff had the opportunity to take that and chose not to, which to me is more indicative of the fact, the point that there are no other facts that they have in their possession to add to this complaint. Mr. Manning, what if, and this is strictly hypothetical, what if there was an allegation or in the complaint that a certain physical therapist who has treated these injuries said that running in flip-flops is inherently dangerous? Wouldn't you want something from at least the name of that person or by how did he get to that decision or how did she get to that decision somewhere in those pleadings? I would certainly want sufficient facts that would provide us with notice of the basis for that conclusion. That's what we're entitled to on a pleading. I think more importantly, there has to be some connection to actual awareness by this defendant of that risk, which is clearly missing in this case. There is a problem here. How do we know he didn't know? We never got to depose him. He may have known it was dangerous to run in flip-flops and he still made the young man do it. We're going around in a circle here. You need this and they need that. There has to be a point where there is something pled that gets us past, I don't want to say, gets us past the point where we can find out what people knew and what people didn't know. If I listen to your argument and I try to logically apply it, you need or your client would want for this person at orientation to have seen CNN, Fox News, and WGN talk about the serious injuries that occur when people wear flip-flops. How does that work? I don't know that I would necessarily say that we'd have to show that the person had watched these news shows or had done this research outside, but at the end of the day, there have to be facts pled in the complaint sufficient to put this teacher on actual notice of this substantial risk of harm. The common knowledge allegations that are set forth in here, there was nothing even cited from the state of Illinois. We've got websites from Maryland and New York and none of them offer really any basis for the notion that this is such a common, well-understood principle that this teacher would know it. This teacher may not be a gym teacher, but doesn't he have some responsibility in the physical education or in sports? Not as alleged in the complaint. This day was an orientation day. He was there as alleged as a supervisor for that orientation day for freshmen coming into the high school. Just to keep the freshmen busy so that other teachers could deal with them, go outside. Don't play on the gym floor. There's got to be some reasonableness applied to this, even though we're at a certain legal standard. I think we're getting close to your time and I don't mean to cut you off, but if you want to say, if you want to go to a different point, maybe you should do so at this point, or you should sum up. Sure. I will briefly sum up. I do want to point out that the restatement also offers support for the standard that this court followed and lay out, restatement second of torts, especially comments A and G. I'm not going to go into them in great detail, but they specifically refute the plaintiff's position that there should be a lesser pleading standard, that this idea of serious injury or high probability of risk of harm shouldn't be incorporated. It's set forth in the restatement as well. Thank you. With that, in the interest of time, I will wrap up. Appellees, we respectfully request that the judgment of the trial court be affirmed. Thank you. Thank you, Mr. Manning. Mr. Ratzak, if you would like to reply, you may do so. Thank you. I would. I hope to be brief. I know the court heard that from lawyers before. In terms of notice, the complaint said the child told the teacher, I shouldn't do this. See, I have flip-flops on. I'm not sure what the teacher could take from that other than the child is thinking I shouldn't run on my flip-flops because it's dangerous. That alone should be enough notice to the school and notice that at least the child thought it was dangerous. Secondly, it appears that what the defense really wants from the plaintiff here is a version of a 2622 affidavit. As we do in a medical malpractice case, setting out the reasons why the things we allege have to be true. That would surely be barred. It's not required to be barred by any court. My other point is quite simply, in some of the other cases we've cited, they simply asked the one child who had a limp to go check to see if somebody wanted water. They asked the equipment person to go get equipment. Yet, those two askings by the teachers were sufficient in that case to bring about willful nonconduct because there was the potential that using the stairs or walking through the grass where the equipment was present would cause injury. This strikes me, and I know what strikes me is obviously not controlling, but this strikes me as the same sort of situation. Anybody looking at this would say the same thing as if the teacher said, let's go outside and ride mopeds. Everybody would shake their head. You can't do that. These are young children. Anyway, that concludes the best I can do on part of the plaintiff, unless there's questions from the court. We obviously ask that the judgment be reversed. Mr. Rathke, do you have any cases? You keep saying it would obviously be stricken. Such information would obviously be stricken. Do you have any cases where an affidavit or some additional information, some specific fact that has been pled is backed up in the complaint by an affidavit or something else? That affidavit or whatever that something else is has been no one would do that because it would be pleading evidence. It took a statute to require a 2622 affidavit to be filed in support of a medical malpractice case. This standard of Wilson and Lawton requires something in addition to what normally would be there. If it requires, as Mr. Manning said, specific facts, how exactly are those specific facts brought to the attention of the court through the pleadings? Going back to what I said, through the fact that I think anybody looking at flip-flops would say they're not suitable for running any more than running bad footwear with. We have a school policy against it. We have the child telling the teacher, I shouldn't do this. The child may be wrong. Maybe the defense is going to bring an expert to say, no, flip-flops are fine for running. Here's some runners that do it. But the child did not think it to be the case. At this pleading stage, I think the child's word, ironically, should become the governing word. Other than that, we obviously ask for the relief we mentioned earlier, which is a reversal. All right. Justice Hudson, Justice Brennan, anything else? I have no further questions. Thank you. I do not either. Thank you. All right. Gentlemen, thank you both for your arguments here this morning. We do appreciate them, and they will be helpful in making our decision. We will take this matter under advisement. We will issue a decision in due course. And at this point, we are going to stand in recess to prepare for our next argument. So you are free to go and enjoy the sun, which is peeking through in both of your backgrounds. Have a good day. Thank you. Thank you. You do the same.